## GERALD L. BRYAN AND OTHERS v. COMMUNITY STATE BANK OF BLOOMINGTON.

172 N. W. (2d) 771.

November 28, 1969—No. 41835.

*Diessner, Wurst, Bundlie, Carroll & Crouch,* for relator.

*Larkin, Hoffman, Daly, Lindgren & Danielson, Ltd., James P. Larkin,* and *Patrick J. Delaney,* for respondents.

NELSON, JUSTICE.

This case comes before the supreme court upon a writ of certiorari to review an order issued by the Department of Commerce

dated November 26, 1968, granting an application for a bank charter.

On February 11, 1966, applicants filed their application requesting a certificate of authority to transact a banking business at the intersection of France Avenue and Old Shakopee Road in Bloomington, Minnesota. Hearings commencing April 7, 1966, were held from time to time until July 27, 1966. On August 2, 1966, the Department of Commerce entered an order denying the application on the grounds that the applicants failed to demonstrate a reasonable public demand for the bank in the proposed location and that the probable volume of business in the location would be insufficient to insure and maintain the solvency of the applicant bank and the solvency of the existing banks in the locality. Such order was made pursuant to Minn. St. 45.07.[1]

Applicants sought review of the order of August 2, 1966, in Hennepin County District Court pursuant to § 15.0424[2] of the

---

[1] Minn. St. 45.07, providing conditions for the issuing of bank charters, reads in part as follows: "If the applicants are of good moral character and financial integrity, if there is a reasonable public demand for this bank in this location, if the organization expenses being paid by the subscribing shareholders do not exceed the necessary legal expenses incurred in drawing incorporation papers and the publication and the recording thereof, as required by law, if the probable volume of business in this location is sufficient to insure and maintain the solvency of the new bank and the solvency of the then existing bank or banks in the locality without endangering the safety of any bank in the locality as a place of deposit of public and private money, and if the department of commerce is satisfied that the proposed bank will be properly and safely managed, the application shall be granted otherwise it shall be denied."

[2] Minn. St. 15.0424 provides: "Subdivision 1. Any person aggrieved by a final decision in a contested case of any agency as defined in Minnesota Statutes, Section 15.0411, Subdivision 2 (including those agencies excluded from the definition of 'agency' in section 15.0411, subdivision 2, but excepting the tax court, the workmen's compensation commission sitting on workmen's compensation cases, the department of em-

Administrative Procedure Act. Because of a lack of substantial evidence to support the department's conclusions the district court remanded the case for further proceedings and authorized the Department of Commerce to receive additional evidence and testimony. The court in its memorandum stated that it would seem either that the department did not accept some of applicants' evidence, that it found the evidence it did accept insufficient to establish a reasonable public demand, or that it considered evidence which was not made available to the court. In any event, the court did not know or was unable to determine the basis of the department's decision. The remanding order therefore required the Department of Commerce to make specific findings of fact supporting its conclusions, such findings to specify the appropriate geographical area to be considered and

---

ployment security, the labor conciliator, and the railroad and warehouse commission), whether such decision is affirmative or negative in form, is entitled to judicial review thereof, but nothing in this section shall be deemed to prevent resort to other means of review, redress, relief, or trial de novo provided by law now or hereafter enacted. * * *

       \*   \*   \*   \*   \*   \*

"Subd. 5. If, before the date set for hearing, application is made to the court for leave to present additional evidence on the issues in the case, and it is shown to the satisfaction of the court that the additional evidence is material and that there were good reasons for failure to present it in the proceeding before the agency, the court may order that the additional evidence be taken before the agency upon such conditions as the court deems proper. The agency may modify its findings and decision by reason of the additional evidence and shall file with the reviewing court, to become a part of the record, the additional evidence, together with any modifications or new findings or decision.

"Subd. 6. The review shall be conducted by the court without a jury and shall be confined to the record, except that in cases of alleged irregularities in procedure before the agency, not shown in the record, testimony thereon may be taken in the court. The court shall, upon request, hear oral argument and receive written briefs. Except as otherwise provided all proceedings shall be conducted according to the rules of civil procedure."

cover the 12 points outlined by this court in In re Application of Jackson, 277 Minn. 293, 152 N. W. (2d) 472.

The department thereafter held hearings during which new evidence was taken. It then made detailed findings of fact and conclusions of law and granted the application for the bank charter, reversing its prior decision.

Community State Bank of Bloomington filed the petition for certiorari. It should be noted that the Department of Commerce and said objector had appealed from the district court's order but such appeal was dismissed on the ground that they failed to comply with the Rules of Civil Appellate Procedure.

This appeal presents the following issues: (1) Is it proper to appeal to district court to review an order of the Department of Commerce denying an application for a certificate of authority to transact a banking business? (2) Was it proper for the district court to authorize the taking of additional evidence and for the department to hear additional evidence arising subsequent to the first hearing? (3) Was the decision of the department granting the application supported by substantial evidence?

1. As to the first issue, Minn. St. 45.07 provides:

"* * * In case of the denial of the application, the department of commerce shall specify the grounds for the denial and the supreme court, upon petition of any person aggrieved, may review by certiorari any such order or determination of the department of commerce."

Relator questions whether § 15.0424 of the Administrative Procedure Act was intended to create a dual method of judicial review. Section 15.0424, subd. 1, of that act provides for judicial review of a final decision in a contested case coming from any administrative agency, with certain exceptions. However, it also provides that "nothing in this section shall be deemed to prevent resort to other means of review, redress, relief, or trial de novo provided by law * * *." Thus, review under the Administrative Procedure Act is optional, and traditional methods, such as cer-

tiorari under § 45.07, are still available.[3] In the instant case, therefore, applicants proceeded properly in appealing to the district court.

2. In resolving the second issue, we find it necessary to dispose of relator's contention that the district court exceeded its scope of review by requiring the commerce department to produce more detailed findings in accordance with each of the 12 points outlined in the Jackson case.

We must first point out that relator is not on sound ground in raising an alleged district court error on a review by certiorari of an administrative agency's decision. Relator had a right of appeal from the district court decision, but such right was apparently wasted due to procedural errors. It should not now have another chance for that appeal. Nevertheless, since the issue has been raised, we will deal with it briefly.

The district court based its remand upon the following language in In re Application of Jackson, *supra,* which required 12 detailed findings on the matter of reasonable public demand (277 Minn. 295, 152 N. W. [2d] 474):

"* * * Thus, in determining whether a 'reasonable public demand' is established in any case, it is required that these words be given a meaning which will promote the legitimate interest of the community as a whole in having a sound banking structure, reasonably competitive and fully adequate for the needs of the community. In making this determination, the following factors are among those that should be considered: (1) Number of banks already serving the area in which the proposed bank would locate; (2) size of area; (3) population of area; (4) wealth of residents of area; (5) commercial and industrial development of area; (6) potential growth of area; (7) adequacy of the services being provided by existing banks compared to the needs of residents and the services to be offered by proposed

<hr>

[3] See, Roberts, *Using the Minnesota Administrative Procedure Act,* The Bench and Bar of Minnesota, Vol. 7, No. 9, February 1964.

bank; (8) capability of existing banks to handle potential growth of the area; (9) convenience of the location of existing banks to residents of the area as compared to convenience of the proposed bank; (10) size of banks in area; (11) dates when the banks in the area were established; and (12) the number of persons in area who desire to use the proposed bank and the amount of business they would generate."

Relator's contention that the above 12 factors need not be spelled out in the commission's findings is based on language in § 15.0422 requiring all agency decisions to be accompanied by a statement of reasons "consist[ing] of a *concise statement of the conclusions* upon each contested issue of fact necessary to the decision." (Italics supplied.) However, note 5 to the Jackson case interprets § 15.0422 as requiring more than a mere conclusion that there is no reasonable public demand. It is necessary for the commission to indicate the reasons behind its decision or to make specific findings of fact to support it.

3.   The district court also had statutory support for its review and subsequent remanding order. Minn. St. 15.0425 permits a reviewing court to affirm or remand the agency decision, or reverse or modify it—

"* * * if the substantial rights of the petitioners may have been prejudiced because the administrative finding, inferences, conclusion, or decisions are:

\*   \*   \*   \*   \*

"(c)   Made upon unlawful procedure; or

\*   \*   \*   \*   \*

"(e)   Unsupported by substantial evidence in view of the entire record as submitted; * * *."

Since evidence submitted in other proceedings may have been considered without conforming to the statutory requirements or basic concepts of evidentiary law, and there did not seem to be substantial evidentiary support for the department's decision, the district court's order seemed proper.

In State v. Tri-State T. & T. Co. 204 Minn. 516, 524, 284 N. W. 294, 301, the court stated:

"The zone of propriety between the extremes of mere conclusion and undue particularity has never been accurately defined. It has been said that all of the essential facts upon which the order is based must be found."

In Morey v. School Board of Ind. School Dist. No. 492, 271 Minn. 445, 450, 136 N. W. (2d) 105, 108, the court stated that—

"* * * an administrative board should state with clarity and completeness the facts and conclusions essential to its decision so that a reviewing court can determine from the record whether the facts furnish justifiable reason for its action. An administrative board should not leave to the court the obligation 'to spell out, to argue, to choose between conflicting inferences. Something more precise is requisite in the quasi-jurisdictional findings of an administrative agency. Beaumont, S. L. & W. Ry. Co. v. United States, 282 U. S. 74, 86, 51 S. Ct. 1, 75 L. ed. 221.'"

Once it is concluded that the district court could require more detailed findings, it is a short step to conclude that the court proceeded properly in allowing additional evidence to be taken at the rehearing. Section 15.0425 of the Administrative Procedure Act authorizes a reviewing court to remand the case *for further proceedings*. Section 15.0424, subd. 5, which requires an application to the reviewing court for leave to present additional evidence, is inapplicable, since it deals with a situation in which the applicant wants additional evidence taken *prior* to the reviewing court's hearing of the case.

In State ex rel. Spurck v. Civil Service Board, 226 Minn. 240, 251, 32 N. W. (2d) 574, 581, this court discussed the matter of review of agency proceedings:

"It is sometimes said that on certiorari the judgment should either affirm or reverse (quash) the proceedings brought up for review. This is not a strictly accurate statement of the rule. A

remand by the court to an administrative agency upon reversal of the latter's determination does not dismiss or terminate the administrative proceedings. The administrative agency is bound by the court's decision on questions of law. * * * Where the judgment is one reversing the determination of an administrative agency, the case should be remanded for further proceedings according to law. While questions of fact and of policy are for administrative and not judicial determination, the courts have the power to determine questions of law. For example, while the court may set aside as confiscatory a public utility rate, it may not prescribe the rate, because rate-fixing is not a judicial function."

Thus, it was proper on remand for the Department of Commerce to hear additional testimony.

4. The final issue is whether the applicants demonstrated a reasonable public demand for the bank pursuant to § 45.07.

The supreme court will not interfere with an administrative agency's conclusions unless it appears that the agency has violated a constitutional provision; has not kept within its jurisdiction; has proceeded upon an erroneous theory of law; has acted arbitrarily or capriciously so that its determination represents its will and not its judgment; or is without evidence to support its conclusions. See, § 15.0425; State ex rel. Dybdal v. State Securities Comm. 145 Minn. 221, 176 N. W. 759; State ex rel. Saari v. State Securities Comm. 149 Minn. 101, 182 N. W. 910; State ex rel. Duluth Clearing House Assn. v. Department of Commerce, 245 Minn. 529, 73 N. W. (2d) 790; In re Application of Gustafson v. Richfield Bank & Trust Co. 270 Minn. 348, 133 N. W. (2d) 843; In re Application of Jackson, *supra.*

The record in the instant case presents substantial evidence pointing to the existence of a reasonable public demand for a bank in the proposed locality. That evidence furnishes proof that the population of Bloomington has increased from 12,000 in 1953 to over 80,000 in 1968, which makes it the state's fourth largest city; that there are only two banks presently located in Bloom-

ington; that no banks have been chartered since 1953; that in 1967 Bloomington became the third highest community in the state in terms of assessed valuation; that there are no existing banks within the primary trade area consisting of 12 square miles centered around the intersection of Old Shakopee Road and France Avenue; that the 1966 effective household buying income in the primary and secondary trade area was $10,905 and the average price of a new home in the primary trade area in 1968 was $38,000; that the intersection upon which the proposed bank would be located is part of one of three major commercial centers in Bloomington; that although the two banks in Bloomington, and others in surrounding suburban communities, are not incapable of handling the banking needs of the primary trade area involved here, inconvenience in terms of location and traffic congestion would result if no new bank were chartered; that a survey taken for purposes of the application resulted in 49 percent of the families answering that one or more of their members was either very likely or somewhat likely to make some use of the bank's facilities; and, finally, that there was no evidence giving rise to the inference that the solvency of existing banks in the area would be threatened.

We therefore affirm the order of the Department of Commerce on the grounds that substantial evidence adduced at the hearing supports the department's final decision.

Affirmed.

MR. JUSTICE ROGOSHESKE took no part in the consideration or decision of this case.